IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KYLE AVERY,                                        No. CIV S-08-2605-CMK-P

    Plaintiff,

  vs.                                                              ORDER

JAMES WALKER, et al.,

    Defendants.

_____/

       Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1).

       The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne,

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff[1] names the following as defendants:  Walker, Elia, Vance, and Jackson.  Plaintiff, who practices the Wiccan/Pagan religion, states that since his arrival at prison he has been "trying to re-vamp the Wiccan/Pagan religious program."  He describes "ongoing administrative problems" relating to access to religious packages from outside vendors.  Plaintiff states that he was asked by defendant Vance whether he would be willing to "take a leadership position for Pagans."  Plaintiff agreed to act as an spokesperson for Wiccan/Pagan inmates.  According to plaintiff, in this capacity he attempted to obtain an outside area at the prison which could be designated as a Pagan lodge.  Plaintiff states that he made this request to defendants Vance and Elia.

/ / /

---

[1] Plaintiff states that he is representing a class of inmates including Bruce Scott, Manvel Dillard, and "any and all priorly and futuly [sic] individuals listed as Wiccan."  Plaintiff, however, is a non-lawyer proceeding without counsel.  It is well established that a layperson cannot ordinarily represent the interests of a class.  See McShane v. United States, 366 F.2d 286 (9th Cir. 1966).  This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se.  See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975).  In direct terms, plaintiff cannot "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure.  See Martin v. Middendorf, 420 F. Supp. 779 (D.D.C. 1976).  This action, therefore, will not be construed as a class action and instead will be construed as an individual civil suit brought by plaintiff.  The Clerk of the Court will be directed to update the docket to reflect that this suit is brought by plaintiff individually.

According to plaintiff, defendant Vance suggested that part of an area set aside for the Native American sweat lodge be designated for use by Wiccan/Pagan inmates. Plaintiff states that he told defendant Vance he felt this was a bad idea because it would "create problems and animosity" with Native American inmates. He states that "to allow another faith group to move in and desecrate that area" would represent an impediment to the practice of the Native American religion. Plaintiff stated that he felt the Wiccan/Pagan inmates had an "equal right to land use. . ." and a "right to equal space away from another group and to deny this is a violation of our . . . rights. . . ."

Plaintiff states that, despite his conversation with defendant Vance, prison officials nonetheless carved space out of the Native American area for the Wiccan/Pagan inmates and "ordered the Native Americans to dig out of their consecrated land." According to plaintiff, plans exist to build a fence dividing the area into two sections. Plaintiff states that, not only does this create animosity among the Native American inmates, the area sectioned off for the Wiccan/Pagan inmates is not sufficient for their needs "because it is so small a 9 man circle cannot be made in it and the necessary space outside a circle." Plaintiff states on information and belief that"[t]his was done . . . to be a disencurragement [sic] tactic to get Pagans to refuse exceptence [sic] of the area so that the institution will not be liable if Pagans to defuse it." Plaintiff states on information and belief that prison officials acted with the intention of creating tension between the Native American and Wiccan/Pagan inmate groups. Plaintiff alleges that prison officials' conduct "has caused almost the full Pagan population to remove themselves as part of the group to avoid the problems it has created and how it made them appear as invaders and thieves."

///
///
///
///

1           Plaintiff states that "it became apparent that the [Wiccan/Pagan inmates] had to
2  start setting the foundation for litigation in attempt to not only get what we as a Pagan group have
3  coming legally but to protect ourselves from discrimination and other administrative
4  disencurragement [sic] tactics."  Plaintiff states that "[i]n the study of the situation" he
5  discovered an old inmate grievance that had been filed in 2003 by inmate William Rouser and
6  which had been partially granted by defendant Jackson.  According to plaintiff, this prior
7  grievance was a "Wiccan class action appeal" and that "[t]he evaluation of the land dimensions
8  specified in this appeal had never been done as the disposition stated it would."  Plaintiff asserts
9  this as the basis for liability as to defendant Jackson.
10          Plaintiff states that, in September 2008, he submitted a "group action" inmate
11 grievance "to enforce the 2003 disposition already granted."  According to plaintiff, this appeal
12 was screened out as untimely.  Plaintiff sees this as further obstruction of his religious practice.
13 Plaintiff states that, when he approached defendant Vance demanding that the 2003 disposition
14 be put into effect, defendant Vance "became verbally aggressive as if I've ruined his plans."
15 Plaintiff states that defendant Vance threw the appeal across his desk and said:  "This is written
16 by Rouser and holds no authority and I don't care if this appeal was granted in 2003."  Plaintiff
17 states that defendant Vance then ordered plaintiff to get out of his office.  Plaintiff asserts this
18 shows that defendant Vance was "willfully disregarding the appeal and disposition of it and do
19 what he wants regardless of the rights it violates otherwise."  Plaintiff claims that defendants Elia
20 and Walker were aware of the situation outlined in the complaint and did nothing to rectify it.
21          Plaintiff asserts that defendants' alleged conduct placed a substantial burden on
22 the practice of his religion.  He also states that, as a Wiccan/Pagan, he is being treated differently
23 than Native American inmates even though both groups have a religious need for access to land
24 outside for their rituals and ceremonies.  He claims a violation of due process in that religious
25 rights were deprived without any hearing.  Plaintiff seeks injunctive relief and monetary
26 damages.

## II. DISCUSSION

The gravamen of plaintiff's complaint is that defendants' conduct violated his statutory and/or constitutional rights to practice his religion. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the

"reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The first effort to provide heightened protection was the Religious Freedom Restoration Act ("RFRA") of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."  See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard.  In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under

the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89). In applying this test, the court must weight four

factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

In this case, plaintiff has not alleged sufficient facts to show a substantial burden. To the contrary, it appears from plaintiff's complaint that defendants attempted to provide him with an outdoor space for Wiccan ceremonies, but that plaintiff would not accept it. At this point, plaintiff's assertion that sharing space with Native American inmates is purely speculative.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See

1  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to
2  amend, all claims alleged in the original complaint which are not alleged in the amended
3  complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if
4  plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make
5  plaintiff's amended complaint complete.  See Local Rule 15-220.  An amended complaint must
6  be complete in itself without reference to any prior pleading.  See id.

7         If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the
8  conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See
9  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how
10 each named defendant is involved, and must set forth some affirmative link or connection
11 between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d
12 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

13        Finally, plaintiff is warned that failure to file an amended complaint within the
14 time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at
15 1260-61; see also Local Rule 11-110.  Plaintiff is also warned that a complaint which fails to
16 comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule
17 41(b).  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

18        Accordingly, IT IS HEREBY ORDERED that:

19        1.     Plaintiff's complaint is dismissed with leave to amend; and

20        2.     Plaintiff shall file a first amended complaint within 30 days of the date of
21 service of this order.

22  DATED: January 14, 2009

23                                         _____
24                                         **CRAIG M. KELLISON**
                                           UNITED STATES MAGISTRATE JUDGE